UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,               CRIMINAL NO. 25-CR-20224

v.

                                       HON. NANCY G. EDMUNDS

SARMAD RAFI,

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

On numerous prior occasions, and on January 27, 2025, Rafi smuggled weapons parts, including pistol receivers and receiver components, frame parts, and 1,000 rounds of ammunition, from the United States into Canada without a valid license, knowing that he violated this country's export laws. Rafi claims he purchased various firearms components to resell to others in his country, even while the Canadian government has imposed strict laws to prohibit certain firearms and automatic weapons from being sold, imported, or transferred. Rafi's conduct, of exporting United States' weapons parts, that, if assembled, create prohibited firearms and assault weapons in Canada, has high potential to be harmful to United States' foreign policy interests with one of this country's strongest allies. For the reasons outlined below, the Government requests that the Court sentence Rafi to 36

1

months in custody, which is a sentence that comports with Congressional sentencing objectives and is consistent with other similarly situated defendants. (PSR ¶ 82).

## FACTS AND PROCEDURAL HISTORY

In January 2025, Homeland Security Investigations received information that Rafi, a then 21-year-old university student from Ontario, Canada, attempted to purchase 17 sear pins for fully automatic M16 weapons online from a company in the United States and requested that the parts be shipped to a parcel pickup business called "SCC Parcel Pickup" in Port Huron, Michigan. (PSR ¶ 10). An M16 is a military grade assault rifle that can fire single shots or automatic three-round bursts. On May 1, 2020, the Government of Canada prohibited assault-style firearms, including upper receives of M16 rifles, in Bill C-21.[1]

From December 2023 to December 2024, Rafi also sent and then retrieved 13 packages from the same parcel pickup business in Port Huron, Michigan, and brought them back to Canada. (ECF No. 1; PSR ¶ 11). Detroit Special Agents from Homeland Security Investigations (HSI) obtained subpoena records and discovered that the packages that Rafi had sent to SCC Parcel Pickup during that time were mailed from weapons parts companies. (PSR ¶ 11). On December 20, 2023, Rafi

---

[1] "Firearms." Public Safety Canada, accessed on October 27, 2025. https://publicsafety.gc.ca/cnt/cntrng-crm/frrms/index-en.aspx

purchased two level IV body armor plates and had them shipped to SCC Parcel for pickup. (*See* Gov't Exhibit 1, Rafi's purchases). The packing slip on the order warned Rafi that the armor plates could not be exported from the United States without prior written approval. This body armor is a defense article on the U.S. Munitions List subject to controls under the International Traffic in Arms Regulations (ITAR). Travel records confirmed that Mr. Rafi entered the United States at Port Huron, Michigan on December 30, 2023, and returned to Canada the same day. (*See* Gov't Exhibit 2, Rafi's Travel Records). SCC Parcel records shows that this package was checked out the same day.

On April 16, 2024, Rafi purchased four level IV body armor plates and had them shipped to SCC Parcel for pickup. (*See* Gov't Exh. 1). On May 25, 2024, Rafi purchased two level IV body armor plates and had them shipped to SCC Parcel for pickup. (*Id.*). The packing slip on the orders warned Rafi that the body armor plates could not be exported from the United States without prior written approval. Travel records confirmed that Mr. Rafi entered the United States at Port Huron, Michigan on May 31, 2024, and returned to Canada the same day. (*See* Gov't Exh. 2). SCC Parcel records show that these packages were checked out the same day.

On January 13, 2025, Rafi had seven packages sent to SCC Parcel Pickup. HSI obtained subpoena records of the purchases and discovered the packages contained the following articles:

3

- Seven 3D Printed Pistol Frame Parts Set that is Glock compatible

- 10.5 inch complete 5.56 pistol upper receiver with flash can

- VZ 61 Scorpion Parts Kit Complete Parts Kit, unissued with US made barrel, 20 round Magazine, Holster and cleaning kit

- Endcap/Adapter with stock interface for GHM9/45

- 7 round shotgun card for 12-gauge shells

- Night vision goggle mount adapter for a helmet

- Various pins, springs, and AR style upper receiver components.

(ECF No. 1, PSR ¶ 12). On January 27, 2025, Rafi entered the United States from Canada at the Blue Water Bridge in Port Huron, Michigan, driving a silver Volkswagen Jetta with an Ontario license plate. (PSR ¶ 13).

      HSI conducted surveillance and followed Rafi to SCC Parcel Pickup. Agents saw him enter and leave the business carrying multiple parcels in his arms. Rafi placed the packages inside his vehicle's trunk and drove to a pawn shop. (*Id*.). Rafi left the pawn shop carrying a bag and a piece of paper in his hands. After Rafi left the shop and returned to his vehicle, HSI obtained a receipt from the pawn shop and discovered that Rafi purchased one thousand rounds of .22 caliber ammunition. (*Id*.).

      HSI continued surveillance as Rafi drove back to the Blue Water Bridge port-of-entry to leave the United States for Canada. (*Id*.). Customs and Border

Protection (CBP) stopped Rafi and conducted an outbound inspection. (*Id.*). During the inspection, a CBP officer completed an outbound declaration by asking Rafi if he had any weapons, firearms, ammunition, drugs, or large amounts of currency (over $10,000) in his possession to declare. Rafi claimed that he did not possess any of those items. (*Id.*).

CBP directed Rafi's vehicle to secondary inspection and conducted a border search. Upon inspection of Rafi's vehicle, officers found seven packages in the trunk. The contents of the seven packages matched the records of firearm components and accessories that Rafi purchased online and shipped to SCC Parcel Pickup. (*Id.*). Agents also seized two boxes of ammunition, each containing 500 rounds, from the trunk of Rafi's vehicle, which matched the items listed in the receipt from the pawn shop he visited. (*Id.*).

HSI Detroit Special Agents interviewed Rafi at the port-of-entry after providing him with *Miranda* warnings verbally and in writing. HSI Special Agents also asked Rafi if he had any outbound merchandise to declare. Rafi again denied that he had anything to declare. Later in the interview, Rafi finally admitted that he picked up packages from SCC Parcel Pickup in Port Huron, Michigan to bring back to Canada. When agents asked Rafi why he did not declare the packages found in the trunk of his vehicle, Rafi claimed that he did not want to pay a duty fee. (*Id.*). When Special Agents asked Rafi to describe the contents of the

packages, he admitted that the parcels contained gun parts and accessories. When asked why he did not declare the 1,000 rounds of ammunition that he purchased, Rafi stated that he knew it was against the law to take the ammunition to Canada. (*Id*.).

On August 13, 2018, the President of the United States signed the National Defense Authorization Act of 2019, which includes the Export Control Reform Act of 2018 ("ECRA"). In part, ECRA provides permanent statutory authority for the Export Control Regulations, 15 C.F.R. §§ 730-774, which most recently had been operative under the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701-1706.

ECRA provides that "the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specified activities of United States persons, wherever located, be controlled." 50 U.S.C. § 4811. To that end, ECRA grants the President the authority to "(1) control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or foreign persons; and (2) the activities of United States persons, wherever located, related to" specific categories of items and information. 50 U.S.C. § 4812.

ECRA grants to the Secretary of Commerce the authority to establish the applicable regulatory framework. Pursuant to that authority, the Department of

Commerce reviews and controls the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"). In particular, the EAR restricts the export of items that could contribute to the military potential of other nations or that could be detrimental to United States foreign policy or national security. The EAR imposes licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully re-exported from one foreign destination to another.

Under ECRA (50 U.S.C. §§ 4801-4852), it is unlawful for any person to violate, attempt to violate, conspire to violate, or cause a violation of its provision or any regulation, order, license, or other authorization issued under ECRA. 50 U.S.C. § 4819.

The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), 15 C.F.R. § 774, Supp. No. 1, and are categorized by Export Control Classification Numbers ("ECCN"), each of which has export control requirements depending on the destination, end use, and end user. Generally, items subject to EAR control require a license to be shipped internationally. Rafi required a license for the firearms components and ammunition that he attempted to smuggle into Canada on January 27, 2025. Rafi

was also required to declare these items to CBP officers prior to his departure and willfully failed to do so.

The same day Rafi was arrested by United States authorities for attempted smuggling, Canadian authorities executed a search warrant of his residence in Ontario. Canadian authorities seized a 3D printer, 3D printed Glocks, non-serialized AR15 lower receivers, level IV body armor plates, three firearms, and high-capacity magazines for pistols with pins removed so the magazines can hold more than 10 rounds and magazines for rifles with capacity to hold 30 rounds. Under Canadian law, the maximum capacity for rifles is five rounds.[2] Canadian authorities also executed a search warrant on Rafi's storage locker at his university and recovered two shotguns, 700 rounds of 9mm ammunition, 1000 rounds of 12-gauge ammunition, and 500 rounds of ammunition for large rifle cartridges.

Canadian authorities interviewed other members of Mr. Rafi's gun club, and two members admitted that Rafi sold them body armor and returned it to U.S. authorities. HSI matched the body armor with Rafi's prior purchases from companies in the United States. Rafi also claims he purchased weapons parts from the United States and illegally exported them to Canada to resell the weapons parts to other individuals for a profit. (PSR ¶ 17).

---

[2] "Maximum permitted magazine capacity." Royal Canadian Mounted Police, accessed October 24, 2025. Rcmp.ca/en/firearms/classes-firearms/maximum-permitted-magazine-capacity

In 2020, in the wake of a mass shooting in Nova Scotia, where 22 people were killed, Canada banned AR-15 style rifles and other assault style weapons and semi-automatic rifles.[3] In October 2022, Canada implemented an immediate freeze on the sale and transfer of handguns.[4] The freeze was later codified into the Firearms Act as part of parliamentary bill, which received royal assent in 2023.[5] In March 2025, certain models of Glock firearms are now prohibited under the Criminal Code, meaning they can no longer be legally sold, imported, or transferred. [6]

On January 29, 2025, Rafi appeared on a complaint for smuggling goods from the United States, in violation of 18 U.S.C. § 554, and False Statements, in violation of 18 U.S.C. § 1001(a)(2). (PSR ¶ 1). On February 3, 2025, Rafi consented to pretrial detention. (PSR ¶ 3). On July 14, 2025, Rafi pleaded guilty to Count 3 of an information charging him with smuggling goods from the United States, in violation of 18 U.S.C. § 554, pursuant to a Rule 11 agreement. (PSR ¶ 6).

---

[3] CBC News. "22 victims confirmed dead in N.S. mass shooting." April 21, 2020. Accessed on October 27, 2025. https://www.cbc.ca/news/canada/nova-scotia/portapique-shooting-memorials-april-21-1.5539894.

[4] NPR Politics, "Trudeau orders an immediate freeze on the same of handguns in Canada." October 21, 2022. Accessed on October 27, 2025. https://npr.org/2022/10/21/1130608885/justin-trudeau-canada-handgun-sales-freeze.

[5] "Former Bill C-21: Keeping Canadians safe from gun crime." Public Safety Canada, accessed on October 27, 2025. https://publicsafety.gc.ca/cnt/cntrng-crm/frrms/c21-en.aspx.

[6] Government of Canada, List of firearms: for individuals - Canada.ca. accessed on October 27, 2025. https://canada.ca/en/public-safety-canada/campaigns/firearms-buyback/individual-lists-firearms-lower-upper-receivers/list-firearms-individuals.html.

## ADVISORY GUIDELINE RANGE

Although advisory, the Sentencing Guidelines remain an important factor in fashioning an appropriate and just sentence. This is because "it is fair to assume that the Guidelines insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *United States v. Rita*, 551 U.S. 338, 345 (2007). Sentencing starts with calculation of the guidelines range to promote Congress's sentencing goals, namely, to "provide certainty and fairness in meeting the purposes of sentencing, while avoiding unwarranted sentencing disparities[.]" *United States v. Booker*, 543 U.S. 220, 264 (2005). Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007).

Here, the probation officer determined that USSG § 2M5.2(a) supplies the base offense level, which applies to the exportation of firearms, ammunition, or military equipment without a valid export license. The probation officer determined that USSG § 2M2.2(a)(1) applied to Rafi's offense conduct because Rafi purchased and then attempted to smuggle .22 caliber long rifle (LR) ammunition exceeding 500 rounds from the United States to Canada and prescribed a base offense level of 26. (PSR ¶ 19). A finding that the offense involved more than 500 rounds of ammunition

"alone prevents application of the lower offense level." *United States v. Gonzalez*, 792 F.3d 534, 539 (5th Cir. 2015). [7]

Moreover, USSG §2M5.2 applies equally to completed sophisticated weaponry as well as its components. *See, e.g., United States v. Fu Chin Chung*, 931 F.2d 43, 46 (11th Cir. 1991 (per curium) (finding that the Guidelines do not distinguish between sophisticated weaponry and parts that could be mapped to sophisticated weaponry); *United States v. Tsai*, 954 F.2d 155, 163 (3d Cir. 1992) ("[I]t is sufficient if the item in question is a *component* of a sophisticated weapon or weapons system. That is the more sensible reading of the Guideline since otherwise the enhancement would be inapplicable to a defendant who separately shipped component parts of a sophisticated weapons system.") (emphasis in original). As such, because Rafi possessed and attempted to smuggle firearm components, including frames and receivers, the probation officer determined that he did not qualify for the zero-point offender adjustment, despite no prior criminal history. (PSR ¶ 32). [8]

With reductions for acceptance of responsibility, and with a criminal history category of I, the probation officer calculated the sentencing guideline range

---

[7] The base offense level is reduced to 14 if the offense only involved "non-fully automated small arms and the number of weapons did not exceed two, or the items constituted less than 500 rounds of ammunition for non-fully automatic small arms." *See* USSG § 2M5.2(a)(2).

[8] Under USSG § 1B1.1, Application Note 1(H), a "firearm" is defined to include the "frame or receiver" of a gun, and USSG § 4C1.1 only applies if a defendant "did not posses, receive, purchase, transport, transfer, sell, or other dispose of a firearm or other dangerous weapon…in connection with the offense." *See* USSG § 4C1.1(7).

11

between 46 to 57 months. (PSR ¶ 56). The Government concurs in the calculation and respectfully asks that the Court adopt this guideline range at sentencing and sentence Rafi to 36 months in federal custody, with credit for time served.

## 18 U.S.C. § 3553(a) SENTENCING FACTORS

(1) 3553(a)(1): the nature and circumstances of the offense

Rafi was smuggling semiautomatic firearms parts, ammunition, and body armor from the United States to Canda. Rafi did not declare any of his exported items to Customs and Border Protection at the U.S.-Canadian border, or to Homeland Security investigators when interviewed on January 27, 2025. He admitted, eventually, that he knew he was not supposed to export these items, and it was against the law to do so.

This offense is serious. Rafi is exporting specialized weapons components and accessories to Canada, one of the United States' strongest foreign allies, knowing that these components are export-controlled, and that that he was not permitted to send them to foreign end-users without a license. The United States controls exports like these for a reason – because the government seeks to keep dangerous weaponry out of the hands of prohibited persons or adversaries. Here, based on the search of Rafi's home in Canada, and Rafi's statements to the probation officer, it appears Rafi manufactured illicit Glock pistols, using the 3-D printed parts he exported from the United States, at his residence in Canada. Rafi

12

also possessed non-serialized AR-15 receivers and other high-capacity magazines in his home, both of which are prohibited in Canada. Canadian authorities also found thousands of rounds of ammunition for large rifle cartridges and two shotguns in his university locker. Rafi also sold body armor that he illegally exported from the United States to individuals in Canada. None of these items appear to be necessary for sport hunting.

While Rafi claims he exported the firearm components to resell to others in Canada, and "vetted" the buyers for their "prohibited" status, (PSR ¶ 17), he nonetheless possessed and claims to have sold firearms parts and receivers that, when assembled, create prohibited firearms in Canada. This creates the potential to sour foreign policy between Canada and the United States over the regulation and transportation of restricted firearms, especially if these weapons fall into the wrong hands.

(2) <u>3553(a)(2)(A): the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense</u>

Rafi knowingly exported large amounts of ammunition and weapons components for profit, knowing that his conduct was illegal. Canadian authorities restricted certain firearms to prevent certain type of weapons from being used in mass shootings or other violent acts. Rafi created a black market of sorts by possessing, and admittedly selling, weapons components that can be manufactured

13

into prohibited firearms in Canada. He furthered this clandestine enterprise by purchasing these weapons parts online from United States' companies, having them shipped to a parcel pickup location near the United States-Canadian border, and then driving across international ports-of-entry to retrieve these weapons parts and smuggle them back into Canada without an export license or declaring them with immigration authorities. Rafi's actions - smuggling heavily regulated firearms components – have the potential to harm U.S.-Canadian foreign relations, and both countries' ability to control gun violence.

(3) 3553(a)(2)(B): need for the sentence imposed to afford adequate deterrence

While this is Rafi's first criminal conviction, he was arrested for attempting to export seven different packages of firearms components, as well as 1,000 rounds of ammunition, from the United States to Canada. Law enforcement also discovered that, between December 2023 and December 2024, Rafi had thirteen other packages shipped to the parcel pickup company from weapons parts manufacturers and picked up on days that corresponded to Rafi's prior entries into the United States from Canada. Rafi also purchased eight ITAR-controlled level IV body armor plates in the United States and illicitly exported them to Canada. Canadian authorities interviewed other members of Mr. Rafi's gun club, and two members admitted that Rafi sold them body armor and returned it to U.S.

14

authorities. Rafi's conduct demands deterrence, and a sufficient custodial sentence will best achieve this sentencing objective.

(4) 3553(a)(6): the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct

Rafi should be sentenced consistent with JSIN data and serve 36 months in federal custody, with credit for time served. (PSR ¶ 82). This sentence will avoid unwarranted sentencing disparities and account for Rafi's young age and lack of prior criminal history at the time of the instant offense. (PSR ¶ 70; USSG § 5H1.1 (downward departure based on defendant's youthfulness at the time of the offense). To date, Rafi has been in federal custody for approximately nine months. As such, the government objects to a time-served custodial sentence, or any other significant downward variance, as the record does not support such an extraordinary departure. The fact remains that Rafi illicitly exported ammunition and firearms components that, if manufactured, create prohibited firearms in Canada, *and* he was doing so knowing that his conduct violated export laws. He engaged in this conduct repeatedly, just to line his own pockets, even at the expense of his own education and professional future in Canada. Rafi should face the consequences of his decisions and be sentenced accordingly.

15

## CONCLUSION

The Government respectfully requests that the Court adopt the probation officer's sentencing guideline range, find that a significant downward variance is not appropriate under the circumstances, and sentence Rafi to 36 months in custody, with credit for time served, for his criminal conduct of attempting to illicitly smuggle firearms components, weapons parts, and ammunition from the United States to Canada.

        Respectfully submitted,

        JEROME F. GORGON, JR.
        United States Attorney

        s/Kathryn E. Boyles
        Special Assistant U.S. Attorney
        211 W. Fort St., Suite 2001
        Detroit, Michigan 48226
        (313) 226-9556
        E-mail: kathryn.boyles@usdoj.gov

Dated:  October 27, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system.

Zachary Race Glaza, Attorney for Defendant

s/Kathryn E. Boyles
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone: (313) 226-9556
E-mail: kathryn.boyles@usdoj.gov